UNITED STATES OF AMERICA

vs.                                                         )
                                                            )
CHRISTOPHER PATRICK TANFIELD                                )
                                                            )

### MEMORANDUM AT SENTENCING

The Defendant respectfully asks this Court to impose a sentence at or near the five-year mandatory minimum sentence prescribed for the offense of conviction.

In ***United States v. Green***[1], the Fourth Circuit set forth a detailed procedure to be followed in sentencing a criminal defendant.

### I.     Calculation of Guideline Sentence

In the Presentence Investigation Report (Final Report) filed May 12, 2019, the Defendant was determined to in Zone D at Offense Level 34, with an advisory guideline range of 151-188 months.

In Paragraph 30 of the Presentence Report (Final Draft), the Probation Officer determined a basis for a two-level enhancement:

> "This offense involves the distribution of child pornography. According to the statement of relevant conduct, 'Tanfield stated that he might have been aware of sharing files with others through the Ares software.' Therefore, the base offense level is increased by two

---

[1] 436 F.3d 449, 456 (4th Cir. 2006).

Page 1 of 15

levels. U.S.S.G. §2G2.2(b)(2)."

The government is not seeking this enhancement. The parties negotiated a detailed plea agreement. Paragraph 8 provides:

"Pursuant to Rule 11(c)(1)(B), the parties agree that they will jointly recommend that the Court make the following findings and conclusions as to the U.S.S.G.:
    a. The following apply to the offense(s) to which the defendant is pleading guilty:

**Base Offense Level [U.S.S.G.§2G2.2]: 22**

    Specific Characteristics:

| | |
|---|---|
| U.S.S.G.§2G2.2(b)(2) – Material involved [sic] a prepubescent minor | +2 |
| U.S.S.G.§2G2.2(b)(4) – Sadistic and Masochistic | +4 |
| U.S.S.G.§2G2.2(b)(6) – Use of a Computer | +2 |
| U.S.S.G.§2G2.2(b)(7)(A) – The offense involved 600+ images | +5 |

An enhancement for distribution is not included in the parties' list of recommendations.[2]

There are good reasons for the exclusion of a distribution enhancement from the plea agreement. The issue of distribution via the default sharing capability of the ARES peer-to-peer application arose in *United States v. Stitz*[3]. The Fourth Circuit held that a defendant who knows that his ARES software is making child pornography downloaded by his computer available for upload by other ARES users possesses the requisite *mens rea* for a violation of 18 U.S.C. §2252 (Distribution of Child Pornography). It was not necessary for the Defendant to

---

[2] At the same time, however, in Paragraph 8(b), the parties agreed that an enhancement for a pattern of activity did not apply. A distribution enhancement was not excluded from consideration in the same way.

[3] 877 F.3d 533 (4th Cir. 2017).

intend to re-circulate illicit materials.

The circumstances of *Stitz* are distinguishable from those here. Stitz was challenging his conviction in the face of a factual basis which "stipulated" that ". . . during an interview with the FBI, he acknowledges that he was aware his computer was sharing child pornography files on the ARES network". The evidence and argument at sentencing made clear the defendant's awareness that his peer-to-peer file-sharing system made his child pornography images available to others. During his allocution, Stitz told the Court:
> "I knew what peer-to-peer did. I looked for a way to turn it off. I couldn't find one. And I foolishly just kept using it for awhile. . . . I saw a connection made and I saw the file downloaded."

The district court described Stitz's conduct as "a peer-to-peer type situation which [Stitz] knowingly was aware that what . . . he was engaging in, he was making available to others)." Stitz's lawyer told the court, "He had knowledge. I certainly would concede that."

Defendant Stitz had not challenged the factual basis for the plea in the District Court so the standard of review was plain error. 877 F.3d at 536.

Similarly, in *United States v. Layton*[4], the Fourth Circuit found "knowledge" of the workings of the peer-to-peer program installed on the defendant's computer to be sufficient *mens rea*. Layton appears to have taken active steps to facilitate the distribution of child pornography:

> "During the interview, Layton admitted that he had downloaded about ten to fifteen images of child pornography from the peer-to-peer file-sharing program WinMX. Using the same program, Layton had also created a shared folder called 'My Music' that allowed others to download the files."

---

[4] 564 F.3d 330 (4th Cir.

The Fourth Circuit upheld the distribution enhancement, concluding:

> "When knowingly using a file-sharing program that allows others to access child pornography files, a defendant commits an act 'related to the transfer of materials involving the sexual exploitation of a minor.'" *US.S.G. §2G2.2 cmnt. n.1.*

In the Factual Basis, Mr. Tanfield has acknowledged only that he "might have been aware of sharing files with others through the Ares software" not that he knew he was doing so or was more than vaguely aware of the workings of that software. The Court should sustain the objection to the distribution enhancement, leaving the Defendant with an **Adjusted Offense Level** of 35 rather than 37 and a **Total Offense Level** of 32 (Paragraph 41, Page 10, PSIR). Even if the Court were to overrule the objection, Mr. Tanfield's marginal – if not entirely inadvertent – involvement in distribution supports a variance from the advisory guideline. (Paragraph 80, Page 16, PSIR).

## II. Determination of Whether Advisory Guideline Sentence Serves the Factors Set Forth in §3553.

For Mr. Stanfield, the workings of the guideline machinery yield an Offense Level of 34, which, paired with Criminal History Category I, call for an advisory guideline range of 151-188 months.

Mr. Tanfield, his plea to "receipt"[5] notwithstanding, was, essentially, no

---

[5] The choice to charge "receipt" rather than "possession" and, thereby, to implicate a five-year-mandatory minimum sentence and a higher base offense level is entirely discretionary with the prosecution. Virtually every defendant possesses child pornography as a result of receiving it. How else could he possess it? If he had possessed pornography without receiving it, he would almost certainly be charged with the far more serious charge of production. ***United States v. Grober***, 595 F. Supp. 2d 382 (D.N.J. 2008)("The Court recognizes that the government charged and adduced evidence of 'receipt and distribution', but the lynchpin of the offense and the buil of the sentencing hearing focused on what David Grober had on his computer storage devices and consumed for his own use."); ***United States v. Farrelly***, 389 F.3d 649, 657 (6th Cir. 2004)("Every possession necessarily involves a receipt.")

more than a possessor of child pornography and a first time offender. By his account, while he had long been "addicted" to adult pornography, he had only resorted to child pornography in the several months before his apprehension. There is no evidence that has ever committed a contact offense against a child; produced child pornography; deliberately distributed images; or participated in chat rooms. He appears to have overcome some childhood adversity to complete his education and otherwise make his way in the world. He has a very positive work history, having been employed, most recently, as a mail carrier for the United States Postal Service. Twelve-and-a-half to fifteen-and-a-half years in prison is an unreasonable sentence for a first time offender who has no significant criminal history and who has long been a productive citizen.

In ***United States v. Hanson***[6], the District Court judge considered the case before him of an offender "who appeared fairly typical, one with no prior record" and who faced what the court concluded was a disproportionately high guideline range:

> "The flaw with U.S.S.G. §2G2.2 today is that the average defendant charts at the statutory maximum, regardless of acceptance of responsibility for Criminal History. As noted by the Guidelines Commission, there are 'several specific offense characteristics which are expected to apply in almost every case (e.g. the use of a computer[7], material involving children under the 12 years of age, number of images].' See Amendment 664, U.S.S.G. App. C 'Reason for Amendment', (November 1, 2004). The internet provides the typical means of obtaining child pornography resulting in a two-level enhancement. See U.S.S.G. §2G2.2(b)(6). Furthermore, as a result of internet swapping, defendants readily obtain 600 images with minimal effort, resulting in a five-level increase. See U.S.S.G. §2G2.2(b)(7)(D). The 2004 Guidelines created an Application Note defining any

---

[6] 561 F. Supp.2d 10904 (E.D. Wis. 2008).

[7] In sentencing Mr. Stitz, Judge Robert Conrad varied downward from the advisory guideline, in part because the enhancement for use of a computer was "put in place at the time when use of the computer was a more significant fact than it appears today". *Stitz*, 877 F.3d 533, 536.

video-clip as creating 75 images. See U.S.S.G. §2G2.2(b)(2)(2), (4). Thus one email containing eight, three-second video clips would also trigger a five-level increase. Undoubtedly, as the Commission recognized, some of these images will contain material involving a prepubescent minor and/or material involving depictions of violence (which may not include 'violence' per se, but simply consist of the prepubescent minor, engaged in a sex act), thereby requiring an additional six-level increase. See U.S.S.G. §2G2.2(b)(2), (4). Finally, because defendants generally distribute pornography in order to receive pornography in return, most defendants receive a five-level enhancement for distribution of a thing of value. See U.S.S.G. §2G2.2(b)(3)(B). Thus, an individual who swapped a single picture, and who was engaged in viewing and receiving child pornography for a few hours, can quickly obtain an offense level of 40. Even after Acceptance of Responsibility, an individual with no prior criminal history can quickly reach a Guideline Range of 210-262 months, where the statutory maximum caps the sentence at 240 months. See U.S.S.G. §5G1.1(a).

"The results are illogical. Congress set the statutory range for first time distributors as five to twenty years. Congress could not have intended for the average first time offender with no prior criminal history to receive a sentence of 210 to 240 months. An individual with a Criminal History Category of II faces a Guideline range of 235 to 240 months, and any higher Criminal History score mandates the statutory maximum. These results run contrary not only to Congressional will, but also to a principal Guideline policy -- providing harsher penalties to individuals with more significant Criminal History scores while still retaining an incentive for pleas at all Criminal History levels." *Hanson*, 561 F. Supp.2d at 1010-11 (quoting Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of Child Pornography Guidelines* (July 3, 2008) 23-24.

### III. Selection of a Sentence Which Does Serve Those Factors.

A sentence at or near the mandatory minimum of five years would serve the §3553 sentencing factors.

### IV. Reasons for the Selected Sentence (Especially Explaining Why a

## Sentence Outside the Guideline Range Betters Serves the Relevant Sentencing Purposes)

A1. The History and Characteristics of the Defendant

Christopher Patrick Tanfield is 46 years old. His criminal history consists of two misdemeanor simple possession of marijuana convictions, the most recent of which is 16 years old. He was in his twenties at the time of both convictions. He paid a fine in each case; neither conviction resulted in even a probationary sentence.

Tanfield's parents divorced when he was three years old. Both of his parents were highly functional alcoholics. His father, an attorney, was married four times – once, before he married Chris's mother, and twice thereafter. After his parents' divorce, Chris was raised primarily by his mother, although his father remained a presence in his life. James Tanfield died of cancer at age 60, when his son was a college student.

Mary Tanfield was a courtroom clerk. She now is 74 and has Stage 3 lung cancer. Chris has two half-sisters, both older than he. Chris remains close to his mother and his maternal half-sister, Amantha Peterson.

Between 1991 and 1993, Tanfield attended George Mason University in Fairfax, Virginia. He transferred to the University of North Carolina at Asheville and graduated in 1996 with a degree in Musical Technical Engineering.

He has never been married, although there appear to have always been age-appropriate women in his life. He and his high school girlfriend dated for three years and remain friends even now. He has been involved in number of relationships although none appears to have lasted much longer than a year. In 2013, he was engaged to be married to a young woman whom his sister describes as

"wonderful"[8] but his fiancée broke off the engagement. His relationship and sexual history are discussed at length in the Sex Offender Specific Evaluation, which has been submitted to the Court.

He has always worked. Following his graduation from UNC-A, he was employed as an assembler and tester at MOOG Music in Asheville. For nine years – 2004-2013 – he was employed as a community support specialist – essentially a social worker – at Universal Mental Health, also in Asheville. In the six years prior to his arrest, he was a mail carrier with the United States Postal Service.

He appears to have suffered from undiagnosed and untreated depression and anxiety for many years. He sought treatment in 2010 and Lexapro was prescribed. For Major Depressive Disorder, the recommended daily dosage of Lexapro is 10 mg.[9] Mr. Tanfield's prescribed dosage is double the recommended dosage.

### A2. Nature and Circumstances of the Offense

Procuring images of child pornography is abhorrent.

Mr. Tanfield's offenses exist in a context, however. Computers, digital photography and the Internet have changed utterly the prosecution and punishment of child sex crimes. Twenty-five years ago, possession and distribution of child pornography were rarely encountered offenses.[10] The

---

[8]Chris and Eloise brought out the best in each other."

[9]drugs.com/dosage/lexapro.html.

[10]Defense counsel recalls the first child pornography case in which he was involved, a case before this Court. His client was a retired librarian who lived with his elderly mother in Shelby, North Carolina. The defendant had gone to considerable lengths to locate and order photographs – photographs printed on paper not digital images – from Sweden. A package of the photographs was intercepted by the United States Postal Service. Afer pleading guilty, the defendant received a short probationary sentence.

Internet has made the pornography offenses astoundingly easy to commit. Child sexual abuse images have been placed, in a literal sense, at potential offenders' fingertips. For related reason, evidence of the possession and exchange of those images is within easy reach of any law enforcement officer with a peer-to-peer file-sharing program.

For reasons which should cause our society concerns deeper than those of retribution alone, the consumption of child pornography is epidemic. According to the United States Department of Justice, "[a]t any one time there is estimated to be more than one million pornographic images of children on the internet, with 200 new images posted daily". A single offender arrested in the United Kingdom possessed 450,000 images of child sexual abuse and one single child pornography site received a million "hits" in a month.[11]

Similarly, the flood tide – and shock value – of visual images have vastly increased the severity of sentences, as this Court is well aware. The fact that the Internet and the digital-storage of images have made it easier to apprehend pornography offenders does not, alone, justify geometrically increasing the punishment on the apprehended.

Mr. Tanfield was easily apprehended. He has long been dependent upon alcohol and marijuana. He faithfully delivered the mail by day but, in the evenings, he thrashed about the world of pornography so readily accessible via the Internet. He had long been drawn to adult pornography – "addicted" in his own words and the words of Shaaron Boyles< MSW, LCSW. However, he had begun viewing underage pornography only several months before his arrest. He began searching for child pornography in the wake of a painful breakup with an age-appropriate woman. Veteran collectors and distributors of child pornography know to disable the "share" function on peer-to-peer programs. They know how to obtain their

---

[11] https://en.wikipedia.org/wiki/Child_pornography.

images on TOR, the "Dark Web" and how to store their illicit collections in encrypted files. Chris Tanfield – lonely, sloppy drunk and pothead that he was on those evenings -- took none of those precautions.

The consumption of child pornography has far out-paced the ability of law enforcement even to investigate it meaningfully. It is easy to understand and sympathize with the government's frustration at being so overwhelmed by this loathsome outpouring. As citizens, we should all be shocked and disheartened by the numbers. Will the problem, however, be solved by imposing crushing punishments on the relatively few offenders who are caught, most of whom are hapless amateurs compared with the sophisticated wholesale purveyors of child abuse images?

### B. The Need for a Sentence to Reflect the Basic Aims of Sentencing – Just Punishment

- To Reflect the Seriousness of the Offense.
- To Promote Respect for the Law.

Christopher Tanfield is 46 years old. Despite considerable emotional handicaps, he gotten on with his life in mostly commendable ways. He completed his education and began working. He has always held a job and shown up for work at those jobs. He owns a home and pays taxes. His treatment prognosis is good.[12] Even if a guideline sentence is imposed, he is going to return to live among us – although a 15.5 year sentence would leave him close to retirement age when he does.

A sentence at or near the five-year mandatory minimum does reflect the seriousness of the offense and promotes respect for the law.

Before his recent appointment to the Third Circuit Court of Appeals,

---

[12]Ms. Boyles concludes her Sex Offender-Specific Evaluation: "It is expected he will do well with support and encouragement from his social supports and treatment provider."

Stephanos Bibas was a professor at the University of Pennsylvania School of Law. In his 2012 book, *The Machinery of Criminal Justice*, he wrote regarding the balance of retribution and reintegration in criminal sentencing:

> "...The point of punishment is not to ostracize wrongdoers into a permanent underclass, embittered and tempted to revictimize a society that shuns them. The point is to exact appropriate retribution and prepare wrongdoers to return to the fold. Shame, embarrassment, even modest degradation are fitting so long as they are temporary. They must last just long enough for the wrongdoer to be seen repudiating his wrong and discharging at least his moral debt by suffering punishment. The public must see, or at least be able to visualize, some suffering or hard treatment or same, for a limited time. . . . The point is to punish the wrong for a limited time, not to brand the wrongdoer permanently
>
> "Forgiving and reintegrating wrongdoers, especially remorseful ones, are valuable both symbolically and practically. Forgiveness and reintegration hold out incentives for prisoners to reform themselves and earn these rewards, which should not be automatic. They hold out hope for prisoners that after suffering abasement, they will be symbolically lifted up again and start afresh. They highlight a law-abiding, respectable alternative way of life to the cycle of recidivism and reincarceration that snares far too many ex-convicts. Most of all, they reflect the humaneness of a society that, having denounced and punished, can rejoice over the return of its prodical sons. As Winston Churchill, who was no softie, said: 'The mood and temper of the public in regard to the treatment of crime and criminals is one of the most unfailing tests of the civilisation of any country . . . [This civilised attitude includes] unfaltering faith that there is a treasure, if you can only find it, in the heart of every man.'"[13]

Mr. Tanfield's shame, embarrassment, and degradation are assured, indeed, have been demonstrated – as his remorse and resolve to reform have been demonstrated. Indeed, his public abasement began on November 27, 2016 with the search of his home and his arrest. He has lost his work and his home – and his

---

[13]Bibas, *The Machinery of Criminal Justice* (Oxford University Press, 2012). p. 141 [quoting Winston Churchill, Home Secretary, Speech Delivered to the House of Commons (July 20, 1910).]

freedom. He asks this Court for some hope that he can make a meaningful return to the fold.

### – Deterrence/Incapacitation/Rehabilitation

It seems clear that a moderate prison sentence will adequately incapacitate and deter Christopher Tanfield.

With regard to rehabilitation, the Defendant asks to be placed in a Sex Offender Treatment Program (Non-Residential) within the Bureau of Prisons.[14] Mr. Tanfield would be eligible for admission to a BoP treatment program only at such time as he has 21 months remaining on his active sentence.[15] Therefore, the shorter his overall sentence, the sooner he can begin treatment. That treatment is vital to his reintegration into the community.

### C.     The Sentencing Guidelines

It is notable that, in the §3553 hierarchy, "the Sentencing Guidelines" is only one of seven factors which are to be given equal weight: 1. The offense and offender characteristics; 2. The need for a sentence to reflect the basic aims of sentencing; 3. The sentences legally available; 4. the Sentencing Guidelines; 5. Sentencing Commission policy statements; 6. The need to avoid unwarranted disparities; and 7. The need for restitution.

### D.     The Need to Avoid Unwarranted Disparities

Our courts require that sentences be individualized and made to fit the defendant before the Court. At the same time, "unwarranted similarities" should be avoided. ***United States v. Dorvee***, 616 F.3d 174, 187. Given his age, background

---

[14]For his own protection, the Defendant also asks the Court to recommend that he be placed in the Sex Offender Management Program.

[15]Testimony of BoP experts at sentencing hearing in ***United States v. Zuk*** (13 CR 59, WDNC).

and rehabilitative prospects, Mr. Tanfield is an atypical "receiver" of child pornography.

E. <u>Restitution</u>

Restitution issues are being negotiated by the parties.

Respectfully submitted this 3rd day of October, 2019.

        Devereux & Banzhoff, PLLC
        Attorneys for Christopher Patrick Stanfield
        Suite 1100, Jackson Building
        22 South Pack Square
        Asheville, North Carolina 28801
        828-285-9455

By: _/s/ Sean Devereux_____
    Sean Devereux
    (North Carolina State Bar No. 7691)

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of North Carolina by using the CM/ECF system. I certify that the listed participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

> Alexis Ione Solheim
> Special Assistant United States Attorney
> Office of the United States Attorney - WDNC
> 233 United States Courthouse
> 100 Otis Street
> Asheville, North Carolina 28801
>
> Alexis.Solheim@usdoj.gov
>
> David Thorneloe
> Assistant United States Attorney
> Office of the United States Attorney - WDNC
> 233 United States Courthouse
> 100 Otis Street
> Asheville, North Carolina 28801
>
> david.thorneloe@usdoj.gov
>
> Benjamin Bain-Creed
> Assistant United States Attorney
> Suite 1650, Carillon Building
> 227 West Trade Street
> Charlotte, North Carolina 28202
>
> benjamin.bain-creed@usdoj.gov

This 3rd day of October, 2019

                                                */s/ Sean Devereux*
                                                Sean Devereux